IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


LAURENCE CHARLES SAUERS, III,      )
"TREY", LAURENCE CHARLES           )
SAUERS, II, and CAROL JONES        )
SAUERS,                            )
                                   )
               Plaintiffs,         )
                                   )
     v.                            )      1:15CV427
                                   )
WINSTON-SALEM/FORSYTH COUNTY        )
BOARD OF EDUCATION, JULIA          )
EDMONDS, individually and in       )
her official capacity, KAYE        )
HUNTER, individually and in        )
Her official capacity, BRAD        )
ROYAL, individually and in his     )
official capacity, ELLEN           )
WESTON, individually and in her    )
official capacity, KARA            )
RICHARDSON, individually and       )
in her official capacity, MARY     )
TODD ALLEN, individually and in    )
her official capacity, TINA        )
RAMSEY, individually and in        )
her official capacity, SAM         )
DEMPSEY, individually and in       )
his official capacity,             )
GRETCHEN TROUTMAN, individually    )
and in her official capacity,      )
JONATHAN L. GARWOOD,               )
individually and in his           )
official capacity, MORGAN C.       )
THETEROW, individually and in      )
her official capacity, MARTHA      )
C. TEDROW, individually and in     )
her official capacity, and DR.     )
KENNETH SIMINGTON, individually    )
and in his official capacity,      )
                                   )
               Defendants.         )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is a Motion to Dismiss filed by Defendants Julia Edmonds, Kaye Hunter, Brad Royal, Ellen Weston, Kara Richardson, Mary Todd Allen, Tina Ramsey, Sam Dempsey, Gretchen Troutman, Jonathan L. Garwood, Martha C. Tedrow, and Dr. Kenneth Simington (the "School Defendants")[1] (Doc. 20), and a Partial Motion to Dismiss filed by Defendant Winston Salem/Forsyth County Board of Education (the "School Board")(collectively "Defendants"). (Doc. 22.) Plaintiffs Laurence Charles Sauers, III, Laurence Charles Sauers, II, and Carol Jones Sauers (collectively, "Plaintiffs") have responded, (Docs. 27, 29), and Defendants have replied. (Docs. 29, 30.) This matter is now ripe for resolution, and for the reasons stated herein, Defendants' motions will be granted in part and denied in part.

---

[1] This court notes that Plaintiffs have filed an Amended Complaint (Doc. 4) which is currently the operative pleading, and renders the original Complaint (Doc. 1) of no legal effect. See Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001). However, Morgan Theterow, who was listed as a defendant in the original Complaint, is not named as a defendant in the Amended Complaint. As Plaintiffs amended their complaint voluntarily, they have waived any claims against Defendant Theterow. Young, 238 F.3d at 572.

## I.   <u>BACKGROUND</u>

Plaintiff Laurence Charles Sauers, III ("Trey") is
currently a 19-year-old high school graduate who was diagnosed
with dyslexia, and identified as a child with a disability under
the Individuals with Disabilities Education Act ("IDEA"). (See
First Amended Complaint ("First Am. Compl.") (Doc. 4) ¶ 9.)
Trey was enrolled in the Winston Salem/Forsyth County School
system ("WC/FCS") until 2011, when he was withdrawn after
completing the eighth grade. (Id. ¶ 40.) After withdrawing, Trey
attended high school at the Kildonan School ("Kildonan"), a
private school located in New York that specializes in educating
students with dyslexia. (Id. ¶ 41.)   The First Amended
Complaint alleges that in middle school Trey was diagnosed with
anxiety due to "bullying" incidents that were perpetrated by
both students and teachers, and the school was aware of this
diagnosis and the basis for it. (Id. ¶¶ 59-60.)  According to
Plaintiffs, despite this knowledge none of Trey's Individualized
Education Programs ("IEPs") ever addressed his anxiety or
provided ways to deal with it.  (Id. ¶ 59)

The First Amended Complaint alleges that, while enrolled in
WS/FCS, Trey was "personally bullied" by teachers and fellow
students. (Id. ¶ 60.) These allegations include: (1) being told

- 3 -

by teachers "[y]ou can read, you are just being lazy"; (2) being told in front of school personnel and other students that he was simply not trying hard enough; (3) a failure by the teachers to stop bullying by other students; and (4) an incident where Trey "felt cornered" by Defendant Ramsey. (Id. ¶¶ 60-62, 66.) Further, Plaintiffs allege that Defendants made no effort to provide Trey with tutoring, withheld or failed to implement required accommodations, altered curriculum requirements or simply inflated grades, and failed to communicate with Plaintiffs. (Id. ¶¶ 65, 67-68, 70.)  Plaintiffs allege that Trey's anxiety and mood improvement was "drastic" after he enrolled at Kildonan, which allowed him to improve academically and graduate high school. (Id. ¶ 73.)

## II.  **PROCEDURAL HISTORY**

The relevant procedural history in this case extends back to 2011.  After withdrawing Trey from WC/FCS, Plaintiffs initiated a Due Process Petition alleging that the school had failed to provide Trey with a free appropriate public education ("FAPE"). (First Am. Compl. (Doc. 4) ¶ 40.) That petition was voluntarily dismissed without prejudice. (Id.)  In July of 2012, Plaintiffs filed a second Due Process Petition against the School Board that sought reimbursement for tuition expenses at

Kildonan. (Id. ¶ 41.) Plaintiffs dismissed that petition with prejudice on October 15, 2012, after reaching a settlement with the School Board that reimbursed educational expenses and attorney's fees related to the 2011 and 2012 petitions. (See Id. ¶ 42, Ex. 3, Settlement Agreement (Doc. 4-3).)[2] Finally, Plaintiffs filed a third Due Process Petition, alleging that the School Board's proposed IEP program for the 2013-2014 year failed to provide a FAPE, and as a result, sought reimbursement for tuition for the 2013-2014 and 2014-2015 school years. (See First Am. Compl., Ex. 1, Final Decision of Administrative Law Judge (Doc. 4-1) at 5.) On February 27, 2015, the petition was denied by the Administrative Law Judge, who found that the IEP developed by the School Board offered Trey a FAPE. (Id. at 24.) Plaintiffs appealed, and their appeal was denied by the State Hearing Review Officer for the State Board of Education on May 1, 2015, which exhausted Plaintiffs' administrative remedies as was required to bring their IDEA claims in this court. (See First Am. Compl., Ex. 2, Decision of State Hearing Review Officer (Doc. 4-2) at 15.)

---

[2] As discussed in more depth below, Defendants contend that this settlement agreement bars the current suit.

III. **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible provided the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. The pleading setting forth the claim must be "liberally construed" in the light most favorable to the nonmoving party, and allegations made therein are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, "the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. Under Iqbal,

the court performs a two-step analysis. First, the court separates factual allegations from allegations not entitled to the assumption of truth (i.e., conclusory allegations, bare assertions amounting to nothing more than a "formulaic recitation of the elements"). Iqbal, 556 U.S. at 681. Second, the court determines whether the factual allegations, which are accepted as true, "plausibly suggest an entitlement to relief." Id. "At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor." Estate of Williams-Moore, 335 F. Supp. 2d at 646.

## IV.  **ANALYSIS**

In the instant case, Plaintiffs assert a broad range of claims, differing as to each set of Defendants. As to the School Board, Plaintiffs appeal an adverse administrative decision pursuant to the IDEA arising out of the alleged failure to provide a FAPE, asserting the following claims: (1) negligent infliction of emotional distress; (2) breach of contract; (3) negligent supervision and training; (4) an equal protection claim based on Trey's Fifth and Fourteenth Amendment rights; and (5) a due process claim based on the Fifth and Fourteenth

Amendment Rights of Trey's parents. (See First Am. Compl. (Doc. 4) ¶¶ 86-144[3].)

As to the School Defendants, Plaintiffs bring claims for: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) negligent supervision and training;[4] and (4) violations of Plaintiffs' various equal protection and due process rights under the Fifth and Fourteenth Amendments.[5] (Id.)

This court first notes that the motion filed by the School Board is only a partial motion to dismiss, and that the School Board is not moving to dismiss Plaintiffs' first or eighth causes of action, which are failure to provide a FAPE under the IDEA and related attorneys' fees and costs, because those claims are subject to a modified de novo review of the administrative proceedings. (See Def. School Board's Mem. in Supp. of Partial

---

[3] Due to a typographical error, this paragraph is numbered as ¶ 132 in the Amended Complaint.

[4] The claim for negligent supervision and training is asserted only as to School Defendants Royal, Dempsey, and Simington, and the Defendant School Board. (See First Am. Compl. (Doc. 4) at ¶¶ 113-21.)

[5] The School Defendants contend, and Plaintiffs have conceded, that the suit against the School Defendants in their official capacities is duplicative of the suit against the School Board, and Plaintiffs have voluntarily dismissed those claims.

Mot. to Dismiss ("School Board Br.") (Doc. 23) at 2 n.1.) As such, the court will not address those claims in this opinion.

## A. __The Settlement Agreement__

As an initial matter, the School Board and the School Defendants contend that the Settlement Agreement entered into with Plaintiffs on October 15, 2012, bars all claims asserted in the current action except for Plaintiffs' first and eighth claims. (See id. at 5-8.) That Settlement Agreement states in relevant part:

> L.S. and C.S., their heirs, successors, guardians and assigns, hereby forever discharge and release [the School] Board, its members, officers, employees, successors, and assigns from any and all claims, lawsuits, liabilities, demands, actions or causes of action of any kind or character whatsoever, including attorney's fees, except in the event of a breach . . . arising out of or on account of the matters alleged in (or which could have been alleged in) or relating to the petitions filed at OAH Docket No. 11-EDC-11823 and No. 12-EDC-06068 over which the Office of Administrative Hearings has jurisdiction through the date of this Agreement.

(First Am. Compl., Ex. 3, Settlement Agreement (Doc. 4-3) at 3.)

Defendants contend that this language is broad enough to bar every cause of action in this case other than the current IDEA claims. (See School Board Br. (Doc. 23) at 5-8; School Defendants' Mem. in Supp. of Mot. to Dismiss ("School Defendants' Br.") (Doc. 21) at 5-8.) According to Defendants,

- 9 -

Plaintiffs' claims are all based upon the failure to address Trey's disability with proper educational supports and accommodations while he attended Jefferson Middle School, and as such, are barred by the Settlement Agreement. (Id.)  Plaintiffs respond that their allegations are based upon conduct that could not have been raised in a prior Due Process Petition, which they contend dealt only with "educational access." (Pls.' Resp. in Opp'n to School Board Mot. to Dismiss (Doc. 28) at 7.)[6]

North Carolina law favors "the avoidance of litigation," and a settlement agreement that is made in good faith will be upheld based upon "the highest consideration of public policy." See Knight Publ'g Co. v. Chase Manhattan Bank, 131 N.C. App. 257, 262, 506 S.E.2d 728, 731 (1998).  The Supreme Court of North Carolina has explained that

---

[6] Although Plaintiffs also contend that Defendants' motions should be denied because this defense is based on facts contained in a document that does not appear on the face of the complaint, the Plaintiffs themselves attached the Settlement Agreement to both the original complaint and the First Amended Complaint, and reference it in the First Amended Complaint. (See Settlement Agreement (Doc. 1-3); First Am. Compl. (Doc. 4) ¶ 42.)  As such, this court can consider it without converting this motion into a motion for summary judgment. E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety,, as well as documents attached or incorporated into the complaint.").

> A completed compromise and settlement fairly made
> between persons legally competent to contract and
> having the authority to do so with respect to the
> subject matter of the compromise, and supported by
> sufficient consideration, operates as a merger of, and
> bars all right to recover on, the claim or right of
> action included therein, as would a judgment duly
> entered in an action between said persons.

Jenkins v. Fields, 240 N.C. 776, 778, 83 S.E.2d 908, 910 (1954).

As such, if some or all of Plaintiffs' current claims fall within the scope of the Settlement Agreement, they are barred from bringing those claims now. However, here, the court finds that it cannot, at least at this stage, find that the Settlement Agreement bars Plaintiffs claims. The Settlement Agreement releases all claims "arising out of or on account of the matters alleged in (or which could have been alleged in) or relating to the petitions filed at OAH Docket No. 11-EDC-11823 and No. 12-EDC-06068." (See Am Compl., Ex. 3, Settlement Agreement (Doc. 4-3) at 3.) Under this language, the only claims that are released are claims that arise out of or are on account of matters that were alleged in or could have been alleged in Plaintiffs' prior two due process petitions, a release that is narrower than a typical "general release" that releases all claims against a party. See Koch v. Bell, Lewis & Assocs., Inc., 176 N.C. App. 736, 741, 627 S.E.2d 636, 639 (2006) ("'A comprehensively phrased general release . . . is usually held to

- 11 -

discharge all claims . . . between the parties.'" (citing <u>Sykes</u>

<u>v. Keiltex Indus., Inc.</u>, 123 N.C. App. 482, 473 S.E.2d 341

(1996)).  By contrast, the release in the Settlement Agreement

here is not comprehensively phrased, and, without the benefit of

the petitions themselves, this court cannot determine its scope

at this time.

"Because the burden of establishing an affirmative defense

rests on the defendant asserting it, a motion under Rule

12(b)(6) . . . is generally not the appropriate vehicle to mount

such a challenge." <u>McQuade v. Xerox Corp.</u>, No. 5:10-CV-149, 2011

WL 344091, at *3 (E.D.N.C. Feb. 1, 2011) (internal citations

omitted). The court may only reach the merits of an affirmative

defense if facts sufficient to rule on such a defense are

alleged in the <u>complaint</u> itself. <u>Goodman v. Praxair, Inc.</u>, 494

F.3d 458, 464 (4th Cir. 2007).

Because the Amended Complaint does not contain sufficient

facts for this court to address the affirmative defense, it is

not ripe for resolution. Consequently, this court will deny

Defendants' motions to dismiss to the extent they are predicated

on that basis.

**B.    <u>Intentional Infliction of Emotional Distress</u>**

Turning to the allegations in the pleadings, Plaintiff

first alleges a cause of action for intentional infliction of emotional distress against the School Defendants. (First Am. Compl. (Doc. 4) ¶¶ 90-95.) Defendants argue that this cause of action is subject to dismissal because Plaintiffs have failed to allege sufficient facts to state a cause of action.

Under North Carolina law, intentional infliction of emotional distress consists of the following elements: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). A claim may also lie where the defendant's actions show "a reckless indifference to the likelihood that they will cause severe emotional distress." Id.

Extreme and outrageous conduct exists "when a defendant's conduct exceeds all bounds usually tolerated by decent society . . . ." Watson v. Dixon, 130 N.C. App. 47, 52-53, 502 S.E.2d 15, 19-20 (1998), aff'd, 352 N.C. 343, 532 S.E.2d 175 (2000) (internal citations omitted) (The defendant engaged in extreme and outrageous conduct when he "frightened and humiliated [plaintiff] with cruel practical jokes, which escalated to obscene comments and behavior of a sexual nature, . . . finally culminating in veiled threats to her personal safety."). The

- 13 -

conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Briggs v. Rosenthal, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985).

Here, Plaintiffs fail to state a cause of action because the First Amended Complaint fails to plead sufficient facts showing that Defendants acted in a way that was so extreme and outrageous that it would exceed the bounds of decency in a civilized society, or that any of the School Defendants' conduct was either intended to cause severe emotional distress, or was in reckless disregard of a substantial likelihood of such a result. The First Amended Complaint contains a general allegation that Trey was "bullied" by the School Defendants and other students, and several allegations that Trey was told on unnamed dates by unspecified individuals that he "could read, [he was] just being lazy," he didn't "try hard enough," and that he should thank his teachers for "handing his grades to him no matter what quality work product he turned in." (First Am. Compl. (Doc. 4) ¶¶ 59-62, 67-69.)

These allegations simply do not rise to the level of intentional infliction of emotional distress. North Carolina

courts have found that, for intentional infliction of emotional distress, it is not enough that a defendant acts with an intent that is tortious, criminal, or with a degree of aggravation that would entitle a plaintiff to damages for a separate tort. Hardin v. Champion Int'l Corp., 685 F. Supp. 527, 531 (W.D.N.C. 1987).

Plaintiffs allege here that the School Defendants were "discourag[ing] and insensitiv[e]." (First Am. Compl. (Doc. 4) ¶ 60.) The most specific conduct alleged in the Amended Complaint is that Defendant Tedrow told Trey that he was "not trying hard enough," she was "generally dismissive of his disability" in front of other school personnel and students, she belittled Trey in an IEP meeting by saying that he was unmotivated, and an alleged instance where Trey "felt cornered" by Defendant Ramsey, who "tearful[ly]" asked Trey "why he did not like her." (Id. ¶¶ 61, 66, 69.)

The alleged conduct, while perhaps not reflecting well upon the School Defendants, simply does not rise to the level of conduct that "exceeds all bounds usually tolerated by decent society." Watson, 130 N.C. App. at 52–53, 502 S.E.2d at 19-20. Even taken as true, general allegations of "bullying," without more, or allegations of debatably harsh words that are not

connected to any named individual simply do not show conduct that goes "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Briggs, 73 N.C. App. at 677, 327 S.E.2d at 311. Further, the First Amended Complaint contains no allegations that show that Defendants acted either with intent to cause emotional distress, or with reckless disregard that their actions were likely to do so. Plaintiffs have failed to state a cause of action, and this claim will be dismissed.

### C. Negligent Infliction of Emotional Distress

Alternatively, Plaintiffs bring a cause of action against both the School Board and the School Defendants for negligent infliction of emotional distress. (First Am. Compl. (Doc. 4) ¶¶ 96-103.)

Preliminarily, Defendants contend that Plaintiffs cannot state a claim for negligent infliction of emotional distress on the same facts that they allege as the basis for a claim of intentional infliction of emotional distress. (See School Defendants' Br. (Doc. 21) at 12-13.) It is true, as Defendants contend, that basing a claim upon intentional conduct and "simply labeling it as negligent" is not sufficient to state a cause of action for negligent infliction of emotional distress.

See <u>Riepe v. Sarstedt, Inc.</u>, Civil No. 5:09-cv-00104, 2010 WL 3326691, at *4 (W.D.N.C. Aug. 23, 2010.) However, that is not what Plaintiffs have done here. In <u>Riepe</u>, the plaintiff brought a claim for employment discrimination, and a second claim for negligent infliction of emotional distress arguing that, by discriminating against her, the defendant had acted negligently and inflicted emotional distress. <u>Id.</u> at *5. The flaw in that strategy was that the plaintiff had based her claim for negligent infliction of emotional distress on the tort of discrimination, in effect, arguing that the defendant had committed employment discrimination, by definition an intentional tort, and in doing so had acted <u>negligently</u> and inflicted emotional distress. <u>Id.</u> Here, by contrast, Plaintiffs have set out various acts allegedly committed by Defendants, and alleged in the alternative that those actions were <u>either</u> intended to cause emotional distress or, at the very least, negligently committed and resulted in emotional distress. (<u>See</u> First Am. Compl. (Doc. 4) ¶¶ 59-77, 90-103.) Courts routinely allow allegations of intentional and negligent infliction of emotional distress to be alleged in the alternative, and on the same set of facts. <u>See, e.g.</u>, <u>Guthrie v. Conroy</u>, 152 N.C. App. 15, 567 S.E.2d 403 (2002). Because the

- 17 -

actions alleged by Plaintiffs do not in and of themselves bar a claim for negligence, as they did in Riepe, the court will not dismiss the claim on that basis.

Defendants also contend, and Plaintiffs agree, that School Defendants Simington, Dempsey, Royal, and Allen are public officers. (See Pls.' Resp. in Opp'n to School Defendants' Mot. to Dismiss (Doc. 27) at 14; First Am. Compl. (Doc. 4) ¶¶ 14, 17, 19, 23.) Plaintiffs also concede that as public officers, their negligence claims against these individual Defendants barred by public officer immunity. (See Pls.' Resp. in Opp'n to School Defendants' Mot. to Dismiss (Doc. 27) at 14.)[7] As such, the claim for negligent infliction of emotional distress will be dismissed against School Defendants Simington, Dempsey, Royal, and Allen.

As to the remainder of this claim, in order to state a claim for negligent infliction of emotional distress, a plaintiff "must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional

---

[7] This court notes that, as Plaintiffs contend and Defendant School Board apparently does not dispute, governmental immunity will not apply to the School Board in this case because it has waived that immunity by purchasing liability insurance pursuant to N.C. Gen. Stat. 115C-42. See Frye v. Brunswick Cty. Bd. of Educ., 612 F. Supp. 2d 694, 702 (E.D.N.C. 2009).

- 18 -

distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." Ennett v. Cumberland Cty. Bd. of Educ., 698 F. Supp. 2d 557, 560 (E.D.N.C. 2010) (internal quotations omitted).

In order to establish that Defendants' actions were negligent, they must establish (1) a legal duty; (2) a breach thereof; and (3) proximate cause of the injury. Matthieu v. Piedmont Nat. Gas Co., 269 N.C. 212, 217, 152 S.E.2d 336, 341 (1967). Plaintiffs allege that Defendants had a duty to "provide a safe and appropriate learning environment for the students of WC/FCS, including Plaintiff Trey." (First Am. Compl. (Doc. 4) ¶ 97-98.) Plaintiffs contend that Defendants breached that duty, resulting in foreseeable severe emotional distress, including "harm to his emotional and psychological well-being, with physical manifestations of said harm." (Id. ¶¶ 98-100.) North Carolina case law has stated that a teacher has a duty to abide by that standard of care "which a person of ordinary prudence, charged with his duties, would exercise under the same circumstances." Kiser v. Snyder, 21 N.C. App. 708, 710, 205 S.E.2d 619, 621 (1974) (quoting Luna v. Needles Elementary School District, 154 Cal. App. 2d 803, 316 P.2d 773 (1957)).

Plaintiffs allege that Trey was diagnosed with anxiety, a

condition that Defendants in this action were aware of. (First Am. Compl. (Doc. 4) ¶ 59.)  According to Plaintiffs, despite this knowledge, Defendants bullied Trey, insulted his disability and his classroom efforts in front of students and other teachers, and altered grades rather than teach him. (Id. ¶¶ 60-71.) Taking these allegations as true, this court cannot say as a matter of law that these actions did not breach Defendants' duties to Trey as alleged by Plaintiffs. See Schaffner v. Cumberland Cty. Hosp. Sys., Inc., 77 N.C. App. 689, 691, 336 S.E.2d 116, 117 (1985) ("Issues of negligence should ordinarily be resolved by a jury."). Defendants' motion to dismiss this claim will be denied.

### D.   **Breach of Contract**

Next, Plaintiff alleges that the School Board breached the Settlement Agreement contract that they entered into with Plaintiffs. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). In order for a breach to be actionable, it must be a material breach, which is "one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to

perform." <u>Long v. Long</u>, 160 N.C. App. 664, 668, 588 S.E.2d 1, 4 (2003).

Defendants contend first that Plaintiffs' claim for breach of the Settlement Agreement is both duplicative of their claim for denial of a FAPE under the IDEA, and that Plaintiffs failed to administratively exhaust that claim as required by the IDEA, and are now barred from bringing it as a cause of action.

In their supplemental briefing, Plaintiffs concede that they seek the same recovery for both their claim for a denial of a FAPE and for breach of contract, and explain that they pled their breach of contract claim "in anticipation of Defendants claiming release as a bar to some of the conduct alleged in the Complaint." (<u>See</u> Pls.' Suppl. Br. (Doc. 36) at 4.) The First Amended Complaint alleges that the consequences of the alleged breaches were that Trey suffered from a "lack of sufficient educational supports and an ineffective IEP" and that he was not provided a FAPE. (First Am. Compl. (Doc. 4) ¶¶ 111-12.) As Plaintiffs apparently claim no damages for the breach of contract itself, this court finds that it is duplicative of their claims under the IDEA.  As such, to the extent it exists as an independent cause of action, Plaintiffs' claim for breach of contract will be dismissed. However, this dismissal is

without prejudice to Plaintiffs' right to raise breach of
contract as a defense to Defendants' contention that the
Settlement Agreement bars Plaintiffs' claims.[8]

---

[8] In their supplemental briefing, Defendants contend that
Plaintiffs' breach of contract allegations should also be barred
because Plaintiffs did not administratively exhaust them as
required by the IDEA. Although there is no Fourth Circuit case
on point, this court notes that Defendants have identified
persuasive case law finding that exhaustion is required for
allegations of breach of a settlement agreement when the alleged
breach relates to a child's receipt of a FAPE. (See Def. School
Board's Suppl. Br. (Doc. 33.) at 3-5; Traverse Bay Area
Intermediate Sch. Dist. v. Mich. Dep't of Educ., No. 5:06-CV-
139, 2007 WL 2219352, at *9 (W.D. Mich. July 27, 2009). However,
other courts have held that a due process hearing is not the
appropriate venue for determining obligations under a settlement
agreement. See, e.g., H.C. v. Colton-Pierrepont Cent. Sch.
Dist., 341 F. App'x 687, 690 (2d Cir. 2009). In that case, the
Second Circuit found that the dispute over the settlement
agreement centered on determining the school district's
obligations under the agreement and did not concern educational
issues, or the actual provision of a FAPE. Id.  Similarly here,
Plaintiffs' complaints of breach that are raised as a defense
would require resolution of the School Board's obligations under
the Settlement Agreement, such as the date an evaluation was to
occur or the choice of evaluator.  These are purely contract
disputes, which a due process hearing under the IDEA is not
designed to resolve.  Further, the resolution of these contract
issues (i.e., the materiality of the breaches) would not benefit
from the purpose of the exhaustion requirement, which exists so
that educational issues are subject to "discretion and
educational expertise of state and local agencies, or the full
exploration of technical educational issues related to the
administration of the IDEA." Id. (internal quotations omitted.)
As such, for purposes of this case and on these facts, this
court finds that exhaustion is not required to raise breach of a
settlement agreement as a defense.

- 22 -

## E.   <u>Negligent Supervision and Training</u>

Plaintiffs next allege a claim for negligent supervision and training as to the School Board.[9]  To establish a claim for negligent supervision or training in North Carolina, a plaintiff must prove: (1) the specific negligent act on which the claim is founded; (2) incompetence, by inherent unfitness or previous specific acts of negligence from which incompetency may be inferred; (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight or supervision; and (4) that the injury complained of resulted from the incompetency proved. <u>See Davis v. Matroo</u>, No. 5:13-CV-00233-BO, 2013 WL 5309662, at *5 (E.D.N.C. Sept. 19, 2013). A plaintiff's burden in proving these cases is a high one, and "only cases involving notoriously unsuitable employees or allegations of misconduct repeatedly ignored by an employer have met these elements." <u>Id</u>.

Even assuming that Plaintiffs have alleged negligent

---

[9] The First Amended Complaint also alleges a claim against individual Defendants Royal, Dempsey, and Simington on this count, but Plaintiffs acknowledge that these claims should be dismissed as duplicative of those raised against the School Board. (<u>See</u> Pls.' Resp. in Opp'n to School Defendants' Mot. to Dismiss (Doc. 27) at 15.) As such, they will be dismissed.

actions by individuals employed by the School Board, they have
not properly alleged that anyone employed by the School Board
showed "incompetence, by inherent unfitness or previous specific
acts of negligence from which incompetency may be inferred," or
that the School Board had notice of such incompetence. Id. The
First Amended Complaint contains only general allegations of
various statements made by individuals, many of which are not
attributed to any specifically named individual. The only
allegations regarding a failure to train or supervise teachers
or other employees are entirely conclusory. (See First Am.
Compl. (Doc. 4) ¶¶ 120a-b (alleging "[f]ailur[e] to train . . .
teachers . . . on how to assess and address the educational and
other needs of disabled students" and "[f]ailing to properly
supervise teachers . . . with respect to discriminatory

practices.")[10] There are no specific factual allegations in the First Amended Complaint from which this court can infer that the School Board was negligent in either its training or supervision of its employees. Plaintiffs do not allege how the provided training was deficient, how it was related to allegedly negligent acts, or in what ways the School Board's supervision of its employees was deficient. There are no facts that would suggest that the School Board knew of a need to implement a particular training policy, or of the unsuitability of any of the employees at issue here.[11] See Davis, 2013 WL 5309662, at *5.

---

[10] This court notes that the First Amended Complaint also contains allegations that Defendants failed to "properly supervise and/or discipline students," failed to take appropriate corrective measures to stop discriminatory practices, and failed to properly follow procedures for dealing with bullying and discrimination. (First Am. Compl. (Doc. 4) ¶¶ 120c-e.) Setting aside that there are no specific acts of negligence asserted to support these allegations, even if there were, they do not fall within the purview of a claim for negligent supervision and training. As an initial matter, students are not employees of the School Board. Second, it is Fourth Circuit precedent that school officials are not liable for failure to prevent torts by other students. See Stevenson ex rel. Stevenson v. Martin Cty. Bd. of Educ., No. 99-2685, 2001 WL 98358, at *6 (4th Cir. 2001). Finally, to the extent Plaintiffs allege a failure to properly follow procedures, they identify neither the policies at issue nor in what way they were violated.

Even taking Plaintiffs' allegations as true, they are not sufficient to state a claim for negligent supervision or training, and Plaintiffs' claim will be dismissed.

### F. The Federal Constitutional Claims

Plaintiffs next allege that both Trey and his parents' Fifth and Fourteenth Amendment rights were violated by Defendants. (First Am. Compl. (Doc. 4) ¶¶ 122-25.) Specifically, they allege that Trey's equal protection rights were violated by "[t]he bullying and disability-based discrimination" committed by the School Defendants, and that his parents' substantive due process rights were violated by the same conduct, as well as all Defendants' "refusal to protect him" from that same conduct. (Id. ¶ 125b.)[12]

As an initial matter, Trey's parents have no standing to assert their alleged claims, because they have pled no facts

---

[11] Plaintiffs also claim that Defendants breached their duty to Plaintiffs "in other ways as will be learned through discovery or at trial." (First Am. Compl. (Doc. 4) ¶ 125c.) Such an allegation is entirely conclusory, is not enough to state a claim for relief, and as such will not be credited. Iqbal, 556 U.S. at 678 (A plaintiff must allege facts to show "more than a sheer possibility that a defendant has acted unlawfully.).

[12] Plaintiffs also claim that Defendants violated Trey's constitutional and statutory rights "in other ways as will be learned through discovery or at trial." (First Am. Compl. (Doc. 4) ¶ 125c.) This allegation is conclusory, and will not be credited. See supra note 11.

showing that they suffered harm to or deprivation of any legally protected interest. Plaintiffs assert that they have a constitutionally protected right to "direct the upbringing of their child," citing to <u>Hicks ex rel. Hicks v. Halifax Cty. Bd. of Educ.</u>, 93 F. Supp. 2d 649, 658 (E.D.N.C. 1999). (Pls.' Resp. in Opp'n to School Board Mot. to Dismiss (Doc. 28) at 14.) While <u>Hicks</u> does recognize such a right, Plaintiffs have not plausibly alleged a violation of that right. Plaintiffs may have not been satisfied with the services provided to their son, but that is different from interference with Plaintiffs' direction of their child's upbringing.

Plaintiffs allege only that the Defendants' bullying and disability-based discrimination of Trey and Defendants' refusal to protect him from the same conduct by other students violated their due process rights. (First Am. Compl. (Doc. 4) ¶ 125b.) There are simply no allegations that Defendants ever interfered with Trey's parents' right to direct his education or upbringing, and such an allegation is belied by Plaintiffs' successful and unilateral decision to move Trey to a different school. Plaintiffs' cited cases are of little persuasive force, if any, on these facts. For example, in <u>Hicks</u>, the court allowed a § 1983 claim to proceed where parents had alleged that a

mandatory school uniform policy violated their rights to direct the religious upbringing of their children. 93 F. Supp. 2d at 649. Because there are no facts that show any sort of impediment to or abridgement of their right to direct his education or upbringing other than the appropriateness of the provided FAPE at issue here, Trey's parents have failed to sufficiently assert a claim.

Finally, Plaintiffs bring a claim under 42 U.S.C. § 1983, alleging that Defendants violated Trey's equal protection rights. (First Am. Compl. (Doc. 4) 125a.) In their memorandum, Plaintiffs cite to cases that discuss the pleading standard for a violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). (See Pls.' Resp. in Opp'n to School Board Mot. to Dismiss (Doc. 28) at 13-14.) Plaintiffs did not allege a violation of that statute in the First Amended Complaint, and cannot now raise one in their briefing. See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). As such, this court will consider only the equal protection claim alleged in the complaint.

In order to state a claim for an equal protection

violation, a plaintiff must allege that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." See Veney v. Wyche, 293 F.3d 726, 730-31 (4th Cir. 2002). Plaintiffs have alleged no facts to show that there were other students who were similarly situated to him, or that those hypothetical similarly situated people were treated differently. As such, Plaintiffs have failed to state a claim for an equal protection violation.

G. **State Constitutional Claims**

Finally, Plaintiffs allege, in the alternative, that Defendants' actions violated Article I, sections 1, 15, and 19 of the North Carolina Constitution. (First Am. Compl. (Doc. 4) ¶¶ 133-38.)[13]

As to the School Defendants, Plaintiffs now concede that it is a matter of "fundamental jurisprudence the Constitution itself does not recognize or create rights which may be asserted against individuals." Corum v. Univ. of N.C., 330 N.C. 761,

---

[13] Yet again, Plaintiffs also allege that Defendants violated Trey's "constitutional and statutory rights in other ways as will be learned through discovery or at trial. (First Am. Compl. (Doc. 4) ¶ 136c.) As noted above, this entirely hypothetical allegation is not enough to state a claim, and will not be considered by the court.

787-88, 413 S.E.2d 276, 292-93 (1992).  As such, this claim is dismissed as to the School Defendants.

As to the School Board, Plaintiffs argue that, although this claim is only viable if all of their other claims fail, that a student's "equal access to participation in [the] public school system is a fundamental right, guaranteed by our state constitution and protected by considerations of procedural due process." See Sneed v. Greensboro City Bd. of Educ., 299 N.C. 609, 618, 264 S.E.2d. 106, 113 (1980).

However, no North Carolina appellate court has recognized a private right of action for damages under the North Carolina constitution against a local board of education for the denial of the privilege of education.  Frye v. Brunswick Cty. Bd. of Educ., 612 F. Supp. 2d 694, 707 (E.D.N.C. 2009).  Plaintiffs cited support to the contrary is inapposite. In King v. Beaufort County Board of Education, the Supreme Court of North Carolina held only that, because North Carolina had provided a statutory right to an alternative education, a suspended student that had been excluded from alternative education had a state constitutional right to know the reason for her exclusion. 364 N.C. 368, 372, 704 S.E.2d 259, 261 (2010). That court recognized neither a free-standing private right of action under the North

Carolina Constitution, nor one for damages.[14] Further, cases decided after King was handed down have continued to note that no North Carolina court has found a private right of action for damages under the North Carolina constitution against a local board of education for the denial of the privilege of education. See, e.g., J.W. v. Johnston Cty. Bd. of Educ., No. 5:11-CV-707-D, 2012 WL 4425439 at *16 (E.D.N.C. Sept. 24, 2012); Doe v. Charlotte-Mecklenburg Bd. of Educ., 222 N.C. App. 359, 370-71, 731 S.E.2d 245, 252-54 (2012). It is not the role of a federal district court to recognize or create new rights under a state constitution. See Frye, 612 F. Supp. 2d at 707; see also Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314-15 (4th Cir. 2007). Accordingly, this court will dismiss Plaintiffs' State Constitutional claims.

---

[14] Further distinguishing this case from King is the fact that the Supreme Court in that case held that the constitutional right to know the reason for exclusion arose under Article IX, Section 2(1) of the North Carolina Constitution, a provision not raised by Plaintiffs here. 364 N.C. at 372, 704 S.E.2d at 261.

## V.    <u>CONCLUSION</u>

For the reasons stated herein,

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by Defendants Julia Edmonds, Kaye Hunter, Brad Royal, Ellen Weston, Kara Richardson, Mary Todd Allen, Tina Ramsey, Sam Dempsey, Gretchen Troutman, Jonathan L. Garwood, Martha C. Tedrow, and Dr. Kenneth Simington (Doc. 20) is **GRANTED** except as to Plaintiffs' third cause of action for negligent infliction of emotional distress insofar as it is asserted against Defendants Edmonds, Weston, Richardson, Troutman, Garwood, and Tedrow.

**IT IS FURTHER ORDERED** that the Partial Motion to Dismiss filed by Defendant Winston Salem/Forsyth County Board of Education (Doc. 22) is **GRANTED.**

This the 31st day of March, 2016.

_____
United States District Judge

– 32 –